IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ANGELA TAYLOR,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

CIVIL ACTION NO.: 5:17-cv-98

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey Casher ("the ALJ" or "ALJ Casher") denying her claim for Supplement Security Income. Plaintiff urges the Court to reverse and remand the ALJ's decision. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for supplemental security income on September 16, 2013, alleging that she became disabled on September 1, 2012, due to diabetes, a thyroid condition, anxiety, back pain, and hip problems. (Doc. 9-6, p. 6; Doc. 9-2, pp. 18.) Plaintiff later amended her alleged onset date to September 16, 2013. (Id.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On April 27, 2016, ALJ Casher conducted a hearing at which Plaintiff, who was represented by counsel, appeared and

testified. Mark Leaptrot, a vocational expert, also appeared at the hearing. ALJ Casher found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since September 16, 2013. (Id.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2.)

Plaintiff, born on August 18, 1970, was forty-five (45) years old when ALJ Casher issued his final decision. (Id. at p. 28.) She has a general equivalency diploma ("GED"). (Id.; Doc. 9-6, p. 7.) Plaintiff has no past relevant work experience.[1] (Doc. 9-2, p. 27–28.)

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

---

[1] Plaintiff previously worked as a cashier, child care provider, and housekeeper, (doc. 9-6, p. 7), but her work did not rise to the level of substantial gainful activity and is not considered past relevant work, as noted in Section I of this Report.

2

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).[2] If the claimant is

---

[2] In Barnhart v. Thomas, 540 U.S. 20, 28 (2003), the United States Supreme Court found the fourth step of the Social Security Administration's ("SSA") five-step evaluation process to be a reasonable construction of 42 U.S.C. § 423(d)(1)(A)'s definition of disability. In Barnhart, the Third Circuit Court of Appeals disapproved of the fourth step. Specifically, the Third Circuit construed Section 423(d)(1)(A) to require that a claimant's previous work be "substantial gainful work which exists in the national economy" in order to disqualify the claimant from receiving benefits. Barnhart, 540 U.S. at 23. The Supreme Court reversed the Third Circuit and held that the SSA reasonably interpreted the phrase "substantial gainful work which exists in the national economy" to only modify "other" work (i.e., work other than the claimant's previous work). Id. In reaching this conclusion, the Supreme Court afforded deference to SSA's statutory interpretation pursuant to Chevron, U.S.A., Inc. v. Natural Resources

3

unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since September 16, 2013, her application and alleged onset date. (Doc. 9-2, p. 20.) At step two, ALJ Casher determined Plaintiff had degenerative disc disease of the lumbar spine post L5-S1 discectomy, diabetes mellitus, hypothyroidism, obesity, right trochanteric pain, major depressive disorder, anxiety, and opioid abuse, conditions considered "severe" under the Regulations. (Id.) However, at the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. (Id. at p. 22.) The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: lifting 20 pounds occasionally and 10 pounds frequently; standing, walking, and sitting for six hours out of an eight-hour day; occasional bending, balancing, stopping, kneeling, and crawling; occasional climbing of stairs and ramps, but no climbing of ladders, ropes, and scaffolds; and avoiding extreme heat, cold, vibration, hazards, unprotected heights, dangerous machinery, or uneven surfaces. The ALJ also found Plaintiff could perform simple, routine tasks involving short instructions and simple, work-related decisions with few work changes. (Id. at pp. 23–24.) At the next step, the ALJ determined Plaintiff had no past relevant work experience, as Plaintiff's past work did not meet the qualifications for past relevant work because it was not performed

---

Defense Council, Inc., 467 U.S. 837, 843 (1984), and, based on textual rules of statutory interpretation, including the "rule of the last antecedent," the Supreme Court upheld the SSA's five-step process. Id. at 26–29. But see Michigan v. EPA, 576 U.S. ___, ___, 135 S. Ct. 2699, 2712–14 (2015) (Thomas, J., concurring) (questioning Chevron deference).

within the past fifteen years at substantial gainful activity levels. (Id. at pp. 27–28.) The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of information clerk, officer helper, and shipping and receiving clerk, all of which are jobs at the light exertional level and which exist in significant numbers in the national economy. (Id. at pp. 28–29.)

**II.     Issues Presented**

Plaintiff contends the ALJ erred in failing to find she met or equaled Listing 1.04A. In addition, Plaintiff asserts the ALJ erred by finding her hip and spinal impairments did not cause significant functional restrictions that keep her from performing work on a regular and sustained basis. (Doc. 19, p. 2.)

**III.    Standard of Review**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the

court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV. Whether Substantial Evidence Supports ALJ Casher's Determination That Plaintiff did not Meet or Equal Former Listing 1.04A

Plaintiff asserts ALJ Casher erred by finding the medical evidence of record did not contain evidence of nerve root compression or lumbar spinal stenosis, as required by former Listing 1.04. (Doc. 19, p. 12.) Plaintiff asserts the ALJ's determination was erroneously based on a lumbar x-ray from January 14, 2014, that was found to be unremarkable at the L5-S1 disc. Plaintiff contends ALJ Casher failed to consider Dr. Bradley Heiges' review of Plaintiff's June 22, 2015, MRI, which showed a recurrent disc herniation at L5-S1 and scarring that effaced the S1 root. (Id.) Additionally, Plaintiff alleges she had a CT scan of her abdomen and pelvis on January 5, 2016, and this scan showed Plaintiff had degenerative disc disease and facet arthropathy of L5-S1. Plaintiff avers the ALJ did not call a medical expert during the hearing to

provide an opinion on Listing 1.04, nor did he send Plaintiff for a consultative evaluation for Listing 1.04. (Id.)

Defendant asserts the determination whether a claimant's impairments meet or equal a Listing is an issue reserved for the Commissioner. (Doc. 20, p. 6.) Defendant notes Plaintiff cited to her June 2015 MRI and CT scan from January 2016; however, Defendant alleges Plaintiff fails to provide evidence that her impairments satisfied all of the criteria in subsections A or C of Listing 1.04, particularly the duration requirement. (Id. at p. 5.) Defendant states multiple examination notes reveal Plaintiff had normal or intact motor and sensory examinations and reflexes, normal strength in her extremities, and a normal gait. Thus, Defendant posits substantial evidence supports ALJ Casher's determination that Plaintiff's impairments did not meet or equal Listing 1.04. (Id.) Defendant avers the ALJ was under no obligation to obtain a consultative examination when the record contains enough information for the ALJ to make an informed decision. (Id. at p. 6.)

"For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 93 (11th Cir. 2009) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). To prevail at Step Three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that her impairment meets or medically equals a listed impairment. Sullivan, 493 U.S. at 530. A claimant whose severe impairment satisfies or medically equals a listed impairment is "conclusively presumed to be disabled based on his or her medical condition." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). If a claimant cannot prove that she

is disabled at Step Three, she may do so at Steps Four and Five. See Phillips v. Barnhart, 357 F.3d 1232, 1238–40 (11th Cir. 2004).

The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, although the ALJ must consider the Listings in making his disability determination, he is not required to recite mechanically the evidence leading to his ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (internal citation omitted).

Although ALJ Casher determined Plaintiff had degenerative disc disease of the lumbar spine at his Step Two analysis, (doc. 9-2, p. 20), he did not find this severe impairment met or equaled Listing 1.04 at Step Three of his analysis, (id. at p. 22). Specifically, ALJ Casher noted the medical evidence did "not include evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under listing 1.04." (Id.)

> Listing 1.04A requires:
>
> [a] [d]isorder[] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord [w]ith . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Thus, to meet Listing 1.04(A), a claimant must have a spine disorder resulting in "compromise of a nerve root or spinal cord" and show "evidence of nerve root compression" satisfying the four above-listed criteria. Id. In addition, Listing 1.04C

8

requires "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.]"[3] Id.

In addition to finding there was no medical evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, ALJ Casher noted Plaintiff's back pain did not result in her inability to ambulate effectively. (Doc. 9-2, p. 22.) The ALJ observed that, although Plaintiff's October 2013 MRI "showed compromise of the right S1 nerve root," (id.), after her January 2014 discectomy, a lumbar spine x-ray was unremarkable at the L5-S1 level. ALJ Casher stated Plaintiff's November 2015 and February 2016 physical examinations showed that she maintained a normal gait and full motor strength in her upper and lower extremities. Thus, ALJ Casher determined Plaintiff did not meet Listing 1.04. (Id.)

"While [the impairments listed in] Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986). In this case, ALJ Casher made an express, although concise, finding that Plaintiff did not meet Listing 1.04. However, he was not required to cite the evidence he considered to make that determination, nor was he required to specify each subsection within Listing 1.04. Kidd v. Colvin, No. CV 115-207, 2017 WL

---

[3] "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

9

914061, at *5 (S.D. Ga. Feb. 2, 2017), *report and recommendation adopted sub nom.*, Kidd v. Berryhill, 2017 WL 901896 (S.D. Ga. Mar. 7, 2017).

Further, Plaintiff's contention the ALJ should have obtained a consultative examination is also unavailing. If the evidence is insufficient to determine whether the claimant is disabled, then an ALJ may ask a plaintiff to undergo a consultative examination. See 20 C.F.R. § 404.1520b(c)(3). However, although he has a duty to develop the record fully and fairly, "the [ALJ] is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision." Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) (quoting Ford v. Sec'y of Health & Human Servs., 659 F.2d 66, 69 (5th Cir. 1981)); see also Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (ALJ not required to seek additional expert medical testimony to determine claimant's impairment was not severe where record was full and complete). As discussed above, the record contained ample evidence, including the physical examinations that followed Dr. Heiges' MRI and Plaintiff's CT scan showing normal gait and strength, for the ALJ to make the determination Plaintiff did not meet or medically equal Listing 1.04 without obtaining an independent consulting examiner.

In sum, the ALJ's determination that Plaintiff did not meet or medically equal Listing 1.04 is supported by substantial evidence. Accordingly, Plaintiff has not shown substantial evidence is lacking as support for ALJ Casher's determination that she does not meet Listing 1.04 . This enumeration of error is without merit.

**V. Whether Substantial Evidence Supports ALJ Casher's Residual Functional Capacity Finding**

Plaintiff contends the evidence is clear that her back problems did not go away after she had back surgery. (Doc. 19, p. 13.) Plaintiff asserts the hip and spinal impairments that caused significant pain and functional restrictions "returned shortly after her back surgery" on January 2,

2014. (Id.) Plaintiff notes she had some relief initially after surgery, but her pain increased in her lower back three months later. Plaintiff maintains she continued to experience severe pain in May 2014, at which time Dr. Heiges ordered another MRI of her spine. Plaintiff asserts that, when she was able to see Dr. Heiges in June 2015, he noted Plaintiff had muscle spasms and limited range of motion and ordered another MRI, which revealed a "combination of enhancing scar tissue and potential residual disc material." (Id.) Plaintiff asserts she is and was disabled due to a combination of her severe impairments, pursuant to Social Security Ruling 96-8p. (Id. at p. 14.)

Defendant states the objective medical findings support ALJ Casher's assessment of Plaintiff's residual functional capacity. Defendant recognizes Plaintiff was diagnosed with various conditions but asserts that "diagnoses, alone, do not establish work-related limitations." (Doc. 20, p. 7 (internal citations omitted).) Defendant alleges Plaintiff's examinations after her January 2014 surgery did not reveal any significant limitations, and, in fact, revealed mostly normal results. In addition, Defendant notes ALJ Casher considered the opinions of State agency consultants who reviewed the evidence of record as of November 2013 and April 2014 and gave the opinions of Dr. Kirk Brown and Dr. Jack Koransky great weight. (Id. at pp. 8–9.) Defendant avers that, even if Plaintiff can point to other evidence of record that could weigh against the ALJ's decision, she has not shown substantial evidence does not support the ALJ's decision. (Id. at p. 9.)

A residual functioning capacity assessment must always consider and address medical source opinions. If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Social Security Ruling 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only

the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner. 20 C.F.R. § 404.1527(d), (e)(2).

In finding Plaintiff had the residual functional capacity to perform work at the light level with postural limitation, ALJ Casher reviewed Plaintiff's statements in her application for benefits, her subjective complaints given to treating sources, and the objective medical evidence of record. (Doc. 9-2, p. 27.) ALJ Casher found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (Id. at p. 24.) Specifically, ALJ Casher noted Plaintiff reported that she could not sit for more than ten to fifteen (10–15) minutes at a time, yet she still attended church for an hour. In addition, the ALJ noted that Plaintiff stated she was no longer able to watch movies, yet she also stated she went to the movies once a month. ALJ Casher also noted Plaintiff cared for her eight-year old grandson, which was inconsistent with her testimony. (Id. at pp. 24–25.)

Additionally, ALJ Casher observed Plaintiff's hip and spinal impairments did not cause significant functional restrictions, and treatment notes revealed Plaintiff's spinal surgery was successful. (Id. at p. 25.) The ALJ noted Plaintiff reported in February 2014 that her leg symptoms were "fully resolved", and she was "pleased with her surgical outcome." (Id.) ALJ Casher stated Plaintiff continued to complain about back pain in April 2014, yet her physical examinations showed minimal reduction in functioning. In addition, Plaintiff showed no limitations in her range of motion and had full circumduction of the right hip, and images of her lumbar spine did not show any new abnormalities. (Id.) The ALJ observed Plaintiff's back

disorders were assessed as being stable in July 2014. Moreover, the ALJ stated Plaintiff's October 2014 musculoskeletal examinations showed normal range of motion and strength and no focal deficits, and an examination a year later showed no evidence of edema and normal motor strength in Plaintiff's upper and lower extremities. ALJ Casher noted Plaintiff reported no musculoskeletal symptoms during an October 2015 hospital visit, which indicated Plaintiff's pain symptoms "were not persistent over time." (Id.) Further, the ALJ stated Plaintiff's November 2015 and February 2016 neurological examinations showed normal sensation, motor strength of 5/5 in her upper and lower extremities, a normal gait, and no motor or sensory deficits.

ALJ Casher observed that, after Plaintiff's surgery, objective medical tests revealed no new degenerative changes. The ALJ noted that, although a July 2015 MRI of Plaintiff's lumbar spine showed recurrent disc herniation at L5-S1 with scarring that faced the sacroiliac root, the June 2015 lumbar spine "showed improvement since June 2014, with decreased mass effect at the L5-S1 and only trace residual central canal encroachment." (Id.) The ALJ also noted there was no new degenerative changes and only mild right L5-S1 neural foraminal stenosis. Additionally, ALJ Casher stated Plaintiff's medical providers noted the trace foraminal encroachment at L4-L5 was stable with no masses, fractures, distal cord abnormalities, or findings of adhesive arachnoiditis.[4] (Id.)

ALJ Casher gave great weight to the opinions of Drs. Brown and Koransky, State disability examiners, who opined Plaintiff could perform work at the light exertional level with postural limitations. (Id. at p. 27.) The ALJ stated the opinions of Drs. Brown and Koransky

---

[4] ALJ Casher also looked to evidence relating to Plaintiff's diabetes, hypothyroidism, and opioid abuse, as well as any mental health impairments, in making a determination as to Plaintiff's residual functional capacity. (Doc. 9-2, pp. 25–26.) Because Plaintiff's contentions as to her residual functional capacity only relate to her alleged hip and back impairments, the Court does not recount the ALJ's findings as to other conditions potentially impacting his residual functional capacity determination.

were consistent with medical records showing Plaintiff had minimal loss of functioning and the objective medical tests showing stable degenerative changes. (Id.)

In reaching a determination of Plaintiff's residual functional capacity, ALJ Casher looked to objective medical findings and tests and Plaintiff's subjective complaints. What is more, although the State consultative examiners may not have reviewed medical evidence after April 2014, the ALJ did and found the examiners' opinions to be consistent with objective medical evidence from visits after April 2014. (Id.; Doc. 9-10, pp. 12–13, 24–25, 42, 44, 50–52, 57–60, 62–63, 82–83, 88–89, 101–02, 110–11; Doc. 9-11, pp. 3–4, 17, 28.) ALJ Casher's determination is not inconsistent with Dr. Heiges' treatment notes and findings; rather, ALJ Casher considered and incorporated Dr. Heiges' findings in reaching a determination of Plaintiff's residual functional capacity. (Doc. 9-2, p. 25 (citing Doc. 9-10, pp. 12–13, 44).) Substantial evidence supports ALJ Casher's determination of Plaintiff's residual functional capacity. Accordingly, this enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of May, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA